COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| DOLORES LEAHY, ADM. OF THE | : | Sheila G. Farmer, P.J. |
| ESTATES OF KATHERINE | : | Julie A. Edwards, J. |
| RHINEBOLT AND RYAN | : | Patricia A. Delaney, J. |
| RHINEBOLT | : | |
| | : | Case No. 10CAE080065 |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | O P I N I O N |
| | : | |
| RAY RICHARDSON, et al., | | |
| | | |
| Defendants-Appellees | | |

CHARACTER OF PROCEEDING:          Civil Appeal from Delaware County
                                   Court of Common Pleas Case No.
                                   08 CVC09 1215

JUDGMENT:                          Affirmed

DATE OF JUDGMENT ENTRY:            June 27, 2011

APPEARANCES:

For Plaintiff-Appellant                    For Defendants-Appellees

CHARLES H. BENDIG                          BRIAN BRADIGAN
4937 West Broad Street                     DAVID ORLANDINI
Columbus, Ohio  43228                      450 Alkyre Run Drive, Suite 120
                                           Westerville, Ohio  43082

                                           JOHN C. ALBERT
                                           DANIEL HURLEY
                                           500 S. Front Street, Suite 1200
                                           Columbus, Ohio  43215

*Edwards, J.*

{¶1} Plaintiff-appellant, Dolores Leahy, Administrator of the Estates of Katherine Rhinebolt and Ryan Rhinebolt, appeals from the August 3, 2010, Judgment Entry of the Delaware County Court of Common Pleas. Defendant-appellee Knox County Career Center/Knox County Board of Education has filed a cross-appeal.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} On August 12, 2008, Katherine Rhinebolt and Ryan Rhinebolt were passengers in a Volkswagen (hereinafter VW) headed south on State Route 36 at approximately 3:00 p.m. Rachel Shadel was driving the VW.

{¶3} At approximately 3:56 p.m. on the sunny day, as Shadel was driving, she drifted left of the center line dividing the north and south bound lanes of State Route 36 and then jerked back to the right. According to Gregg Jordan, who was traveling 15 to 20 car lengths behind Shadel's vehicle, "the car started to come right. As it did it started to kind of fishtail, I saw brake lights come on and then the front of the car went back to the left. I am assuming whoever was driving panicked at that point because it started to swerve a little, brake lights on, car went to the left, basically slungshot right across" State Route 36 before colliding with a red vehicle driven by appellee Ray Richardson. Deposition of Gregg Jordan at 11-12. Gregg testified that Shadel's car was going pretty fast when it "slung shot" across the road and testified that he did not believe that there was anything that the red vehicle driven by appellee Ray Richardson could have done to avoid hitting Shadel's car. Jordan testified that he believed that Shadel's vehicle was not speeding. He also testified that just before the accident occurred, Shadel's vehicle was going toward the ditch on the southbound lane side of the road

and that it then at a "pretty good rate of speed" "kicked hard" and was heading for the ditch on the northbound lane side. Deposition of Gregg Jordan at 32-33.

{¶4} Michael Messer was driving his Chevy van on State Route 36 when he noticed a VW car coming towards him. He testified that there was a van 60-80 feet in front of him and that the VW was veering towards the van. According to Messer, the van was going off to the right while the VW "whipped back this way real hard to the right, lost control then, and it slid by me and come behind me and hit head-on the red car behind me." Deposition of Michael Messer at 12. According to Messer, the van was almost off of the side of the road when the driver of the VW jerked back and lost control of the vehicle. Messer testified that when he saw the VW, he was going off to the right also and that the driver of the VW "was about half in my lane, slid around me and come behind me. Slid, almost hit a mailbox on the left side of the road, and come right straight across back behind me and hit the car behind me." Deposition of Michael Messer at 14. Messer testified that the driver of the car behind him, who was appellee Ray Richardson, hit the brakes in an attempt to avoid the VW. He testified that the driver probably did not see the VW coming because the VW came straight across the road at him. The following is an excerpt from his deposition testimony:

{¶5} "Q. How long would you say from the time that she - - you took evasive action to avoid her [the driver of the VW] hitting you, until she hit the car behind you?

{¶6} "A. Seconds. It was, it was so fast. I seen her just go by me, all over the road, she was just in a panic. And he did go a little right because - - yeah, he was trying to go right, but it hit too quick. But her, his car went off the road and hers, they both

went off the road on the right side of the road, so - - ." Deposition of Michael Messer at 16.

{¶7}   Messer testified that he did not believe that appellee Ray Richardson, who was driving 60 to 80 feet behind him before the accident, could see the VW coming towards him because all he could see was the back of Messer's van. He, when asked, indicated that he did not think that there was any way that appellee Ray Richardson, could have avoided the VW.

{¶8}   Mary Messer, Michael Messer's wife, was a passenger in his van on the date in question.  She testified that while her husband was driving, she observed a car coming into their lane.  Mary Messer testified that her husband managed to get their van out of the way but that the car kept coming. According to Mary Messer, the driver of the car had a terrified look on her face. Mary Messer further testified that the van in front of them pulled over to get out of the driver's way to avoid hitting her and that the driver of the VW was partially in their lane when they pulled over. She testified that the driver of the VW barely missed hitting their van and that "just seconds" passed from the time the VW nearly hit them until the VW hit the red car driven by appellee Ray Richardson behind them.  Deposition of Mary Messer at 19. She further testified that three or four seconds passed from the time she first saw the VW until the time of impact.

{¶9}   After the accident, Mary Messer went over to assist appellee Ray Richardson. She testified that he told her that, at the time of the accident, he was on a hands- free phone talking to his wife.  She, when asked, testified that based upon what she observed, there was nothing that appellee could have done to avoid the accident.

{¶10} Appellee Ray Richardson, who was a school superintendant for Knox County Career Center at the time of the accident, testified that he was driving home in his own car from an Ohio School Facilities Department meeting in Columbus at the time of the accident. He testified that he was driving northeast at 50 or 55 miles per hour when a VW swerved out in front of him not far away. Appellee testified that he swerved his vehicle to the right and tried to turn into a field or yard. He further testified that a vehicle was "real close" in front of him. Deposition of Ray Richardson at 9. When asked where the VW was when he first saw it, he testified that it was "[r]ight in my face. Right in my lane" and that is was completely in his lane when he first saw it. Id at 10. He also testified that there were only seconds from the time he saw the VW to the time of impact.

{¶11} Appellee Ray Richardson also testified that he knew that the vehicle in front of him had a "close call" with the VW, but when asked if he knew why he did not see the "close call", he testified that he did not and that he was trying to get out of the way. He indicated that he had no response when asked whether there would have been something that prevented him from seeing the close call. Appellee also testified that he had two cell phones in the car on the day of the accident, one which belonged to the school. He testified that he was not talking on the phone when the accident occurred and that he never applied his brakes because he did not have time.

{¶12} After the accident, Jack Holland, who retired from the Ohio State Highway patrol and was a traffic reconstruction expert, was retained by appellant to investigate the accident and prepare a report after reviewing the traffic report and reconstruction by the Ohio State Highway Patrol and the deposition testimony. Holland, during his

deposition, testified that the standard perception of a danger time and reaction time for an unimpaired driver is 1.5 seconds and that it takes additional time for the driver to take action in response to the perceived danger. Holland agreed with the Ohio State Highway Patrol that appellee Ray Richardson was traveling within the posted speed limit, which was 55 miles per hour. During his deposition, he testified that the distance between the point where the VW entered into the northbound lane until the point of impact was approximately 100 feet. The following is an excerpt from his deposition testimony:

{¶13} "Q….And I think you indicated earlier a driver's reaction/perception time normal is 1.5?

{¶14} "A. 1.5.

{¶15} "Q. And that just is to recognize a danger?

{¶16} "A. That's correct.

{¶17} "Q. And then it takes more time for that person to actually do the maneuver or take the action they need to take in response?

{¶18} "A. Yeah. That's - - and that's the reason for most of those swerve to avoid calculations.

{¶19} "Q. Okay. (A discussion is held off the record.)

{¶20} "Q. Okay. Mr. Holland, under opinion number 2A3 you have the total elapsed time from the time of Shadel's, quote, drift, end quote, to the left and the impact with the Richardson Chrysler was eight seconds, correct?

{¶21} "A. Yes.

{¶22} "Q. All right. So for whatever reason, you went ahead and calculated the time from when she first went left of center, corrected herself, went back into - - completely back into the southbound lane, lost control, and jackknifed across into the path of the Richardson vehicle?

{¶23} "A. Right.

{¶24} "Q. Okay. Opinion No. 3.

{¶25} "A. Okay.

{¶26} "Q. Mr. Richardson did not observe the visual cues afforded by the vehicles to his front.

{¶27} "A. Right. Right.

{¶28} "Q. I state that opinion correctly?

{¶29} "A. Yes.

{¶30} "Q. All right. Now, what - - what visual cues are you talking about?

{¶31} "A. The movement to the right off the pavement - - off of the road, off of the lane on to the paved berm by a van to Mr. Messer's front and by Mr. Messer himself.

{¶32} "Q. Okay. So those are the two cues Mr. Richardson should have noticed?

{¶33} "A. Yes. Uh-huh." Deposition of Jack Holland at 67-68.

{¶34} According to Holland, the fact that the Messer vehicle and the vehicle in front of the Messer vehicle both moved to the right should have put appellee Ray Richardson on notice that something may be wrong. The right tires of the Messer vehicle went over the white line onto the berm. Holland also testified that appellee Ray

Richardson should have been visually alerted when Michael Messer tapped off his cruise.

{¶35} During his deposition, Holland testified that Michael Messer, during his own deposition, had testified that appellee Ray Richardson's car was 60 to 80 feet behind him and that it would have taken only .8 to 1 second for appellee Ray Richardson's car traveling 55 miles per hour to cover the "following distance." Deposition of Jack Holland at 74.  Holland, during his deposition, admitted that Shadel's car came between Messer's van and appellee Ray Richardson's car and that "the time frame is less than .8 to one second, because not only is it closer to the Messer van, but she's also traveling in the opposite direction of Mr. Richardson's vehicle."  Deposition of Jack Holland at 76. The following is an excerpt from his deposition testimony:

{¶36} "Q. So we are talking about from the time she enters into - - 'she' being Shadel enters into the northbound lane of Richardson's lane of travel, he has one tenth, two tenths, three tenths, four tenths of a second to react?

{¶37} "A. Well, based strictly on what Mr. Messer had to say in that calculation, yeah, but Mr. Richardson had time to steer off the right side of the road after perceiving and reacting.  There's your 1.5.  He saw her, he steered five or six feet off the side of the road.  That puts him a considerable distance back when he recognized her as a hazard.

{¶38} "MR. ORLANDINI: Objection.  Move to strike.  There's no evidence that he actually saw her.  He could have been reacting to the Messer vehicle.  And moving up to the right the same as the Messer vehicle.  So I move to strike that statement.

**{¶39}** "A. That could be true. But he recognized something and moved to the right. We have recognition.

**{¶40}** "Q. Okay. Let me ask you that: What did he recognize, do you know?

**{¶41}** "A. I would say the Shadel vehicle, but I can't - - I can't prove it.

**{¶42}** "Q. Okay. And at - - and when did he recognize it, if you know?

**{¶43}** "A. Well, 1.5 seconds, that's 121 feet back.

**{¶44}** "Q. Okay." Deposition of Jack Holland at 76-77.

**{¶45}** According to Holland, it took appellee Ray Richardson 1 to 1.1 seconds to move his vehicle 90 to 98 feet to the right prior to the accident.

**{¶46}** Holland indicated that, rather than veering to the right to avoid Shadel's vehicle, appellee Ray Richardson should have braked hard and/or veered to the left. He admitted that the two vehicles in front of appellee Ray Richardson's vehicle effectively avoided colliding with Shadel's vehicle by veering to the right and that the drivers of those vehicles were not negligent, and that the only reason he was able to say that appellee Ray Richardson's movement to the right was not effective was because he was "looking at it from hindsight knowing that an accident happened." Deposition of Jack Holland at 86.

**{¶47}** During his deposition, Holland opined that appellee Ray Richardson was negligent because he moved to the right to avoid colliding with Shadel's VW instead of braking hard and/or veering to the left and because he did not see the danger or "potential hazard" until 2 ½ seconds before impact. Deposition of Jack Holland at 81-82, 105-106.

**{¶48}** On September 10, 2008, appellant filed a complaint in Case No. 08 CV C 09 1215 against Rachel Shadel, George Shadel, who was the owner of the VW, and Allstate Insurance Company.[1] On October 15, 2008, appellant voluntarily dismissed George Shadel pursuant to Civ.R. 41.

**{¶49}** Thereafter, on December 8, 2008, appellant filed a motion seeking the joinder of appellee Ray Richardson, Grange Insurance Company and the Ohio Bureau of Workers' Compensation. The motion stated that Grange Insurance Company insured appellee's Ray Richardson's vehicle and that appellee was on work related activity at the time of the accident. As memorialized in a Judgment Entry filed on January 21, 2009, the motion was granted.

**{¶50}** On March 3, 2009, appellant filed a motion seeking to consolidate Case No. 08 CV C 09 1215 with Case No. 09 CV C 01 0054. Case No. 09 CV C 01 0054 had been filed on January 15, 2009 by appellee Ray Richardson and his wife against Rachel Shadel, George Shadel and Grange Mutual Casualty Company, which provided automobile insurance to appellee. In such case, Grange Mutual Casualty Company had filed a cross-claim against Rachel Shadel. The Motion to Consolidate was granted pursuant to a Judgment Entry filed on March 10, 2009.

**{¶51}** Thereafter, on March 24, 2009, appellant dismissed her claims against Allstate Insurance Company without prejudice.

**{¶52}** On May 12, 2009, appellant filed a Motion for Summary Judgment on the issue of the negligence of Rachel Shadel and the "absence of comparative negligence

---

[1] Appellant, in the complaint, indicated that both decedents, at the time of their deaths, qualified as insureds under insurance policies issued by Allstate to their parents and/or grandmother.

by the decedents." Pursuant to a Judgment Entry filed on July 6, 2009, the motion was granted.

{¶53} On July 23, 2009, appellant, with leave of court, filed an amended complaint. The amended complaint alleged that appellee Ray Richardson's negligence was a substantial contributing cause of injury and also added Knox County Career Center, his employer, as a new defendant.

{¶54} Subsequently, on December 28, 2009, appellee Ray Richardson filed a motion seeking, in part, the joinder of Ohio School Benefits Cooperative Group Health Plan as a party plaintiff. Appellee, Ray Richardson in his motion, alleged that Ohio School Benefits Cooperative Group Health Plan provided health insurance to him at the time of the accident and was claiming reimbursement for payments related to the accident. As memorialized in an Entry and Order filed on January 15, 2010, the motion was granted and Ohio School Benefits Cooperative Group Health Plan was ordered to file its complaint by January 29, 2010. On January 28, 2010, it filed its cross-claim against appellee Ray Richardson.

{¶55} On March 8, 2010, appellee Ray Richardson and his wife dismissed all claims asserted by them against Grange Mutual Casualty Company. Three days later, a stipulation of partial dismissal was filed that dismissed appellant's claims against Rachel Shadel and George Shadel with prejudice and also dismissed appellee Ray Richardson and his wife's claims against Rachel Shadel and George Shadel with prejudice.

{¶56} Appellee Ray Richardson, on March 12, 2010, filed a Motion for Summary Judgment against appellee Knox County Career Center on the issue of appellee Ray Richardson "operating within the course and scope of his employment" at the time of the

accident.    In response, on April 15, 2010, appellee Knox County Career Center/Knox County Board of Education filed a Motion for Summary Judgment, alleging that appellee Ray Richardson was not negligent. On the same date, appellee Knox County Career Center/Knox County Board of Education filed a memorandum in opposition to appellee Ray Richardson's March 12, 2010, Motion for Summary Judgment.

{¶57} Appellee Ray Richardson, on April 15, 2010, filed a Motion for Summary Judgment as to all claims made by appellant and, in the alternative, also moved for summary judgment finding that, at all relevant times, he was acting within the course and scope of his employment with appellee Knox County Career Center.

{¶58} On April 20, 2010, Ohio School Benefits Cooperative Group Health Plan dismissed its cross-claim against appellee Ray Richardson with prejudice.

{¶59} As memorialized in a Judgment Entry filed on August 3, 2010, the trial court granted the Motions for Summary Judgment filed by appellant and appellee Ray Richardson, finding that he was in the course and scope of his employment with appellee Knox County Career Center at the time of the accident. The trial court also granted the Motions for Summary Judgment filed by appellee Ray Richardson and appellee Knox County Career Center/ Knox County Board of Education, finding that appellee Ray Richardson was not negligent.

{¶60} Appellant now appeals from the trial court's August 3, 2010 Judgment Entry, raising the following assignments of error:

{¶61} "I. A DRIVER HAS THE DUTY TO MAINTAIN REASONABLE CONTROL OF HIS VEHICLE AT ALL TIMES, AND OPERATE HIS VEHICLE AT A REASONABLE SPEED FOR ALL CONDITIONS; THIS INCLUDES THE DUTY TO USE ORDINARY

CARE TO PERCEIVE A PERSON OR VEHICLE IN PERIL, AND TO USE ORDINARY CARE TO NOT INJURE A PERSON OR VEHICLE IN PERIL.

{¶62} "II. A JURY QUESTION IS PRESENTED WHETHER A DRIVER USES ORDINARY CARE, WHEN HE HAS 8.0 SECONDS TO PERCEIVE AND REACT TO A VEHICLE IN PERIL, AND DOES NOT SEE THE VEHICLE, OR REACT TO THE VEHICLE UNTIL A MOMENT BEFORE IMPACT, WHERE THERE IS EVIDENCE OF HIS ACTIVE USE OF A CELL PHONE FOR 4 MINUTES BEFORE, AND DURING THE MOMENT OF IMPACT.

{¶63} "III. LAY OPINION TESTIMONY IS INADMISSIBLE ON AN ULTIMATE JURY FACT, WHERE THE PERSONS GIVING THE OPINION LACK THE NECESSARY EXPERT QUALIFICATION, AND LACK THE NECESSARY INFORMATION TO OFFER COMPETENT AND ADMISSIBLE OPINIONS."

{¶64} Appellee Knox County Career Center/Knox County Board of Education has filed a cross-appeal, raising the following assignment of error:

{¶65} "THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT RICHARDSON WAS WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT AT THE TIME OF THE COLLISION."

{¶66} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ. R. 56(C) which provides in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written

stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶67} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates that the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997-Ohio-259, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.

{¶68} It is pursuant to this standard that we view the assignments of error in this case.

I, II

{¶69} Appellant, in her first two assignments of error, argues that the trial court erred in granting summary judgment in favor of appellee Ray Richardson and appellee Knox County Career Center/Knox County Board of Education on the issue of appellee Ray Richardson's negligence. Appellant specifically contends that appellee Ray Richardson had a duty to use ordinary care to perceive a person or a vehicle in peril and to use ordinary care to not injure the same. Appellant further argues that there was a jury question as to whether appellee Ray Richardson used ordinary care when he had 8.0 seconds to perceive and react to Shadel's vehicle and did not see or react to the same until the moment of impact. Appellant, with respect to this argument, notes that there was evidence that appellee Ray Richardson used a cell phone 4 minutes before and during the moment of impact.

{¶70} In a negligence case, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the plaintiff suffered harm; and (4) the harm was proximately caused by defendant's breach of duty. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265. The existence of a duty depends on the foreseeability of the injury. *Id.* at 320-321, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Id.* If a defendant points to evidence illustrating that the plaintiff will be unable to prove any one of the foregoing elements and if the plaintiff fails to respond as Civ.R. 56 provides, the

defendant is entitled to judgment as a matter of law. *Aycock v. Sandy Valley Church of God,* Tuscarawas App. No. 2006 AP 09 0054, 2008-Ohio-105, 2008 WL 115829, ¶ 20.

{¶71} R.C. 4511.01(UU)(1) defines "right of way" as "the right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle * * * approaching from a different direction into its or the individual's path." As noted by the court in *Higgins v. Bennett* (March 6, 2000), Clinton App. No. CA99-08-022, 2000 WL 253672 at 2, "Generally, a motor vehicle has the right to proceed uninterruptedly in a lawful manner in the direction in which it is traveling in preference to any vehicle or pedestrian approaching from a different direction into its path. R.C. 4511.01(UU)(1)…. A driver need not look for pedestrians or vehicles violating his right-of-way. See *Deming v. Osinki* (1970), 24 Ohio St.2d 179, 180-81, 265 N.E.2d 554 (rejecting the notion that drivers in the right-of-way must "look, look effectively and continue to look and remain alert"). However, the operator of a motor vehicle must exercise due care to avoid colliding with a pedestrian in his right-of-way upon discovering a dangerous or perilous situation. *Id.;* R.C. 4511.48(E); *Hawkins v. Shell* (June 4, 1998), Cuyahoga App. No. 72788, unreported; *Markley v. Knutson* (Sept. 26, 1996), Marion App. No. 9-96-29, unreported."

{¶72} In the *Deming* case, cited above, a motorcyclist filed a lawsuit against a motorist who, while making a left turn at an intersection, collided with the motorcyclist who was traveling in an opposite direction. After the trial court entered summary judgment in favor of the motorist, the motorcyclist appealed. The Court of Appeals reversed and then the motorist then appealed.

**{¶73}** The Ohio Supreme Court, in *Deming*, held that it was reversible error to give a jury instruction on contributory negligence when there was no evidence that motorcyclist, who had the right of way, was driving unlawfully at the time of the accident. In *Deming*, the Ohio Supreme Court further held that a driver with the right of way has no duty to look for danger that might be approaching the right of way.

**{¶74}** In *Wall v. Sprague*, Clermont App. No. CA2007-05-065, 2008-Ohio-3384, a motor vehicle driven by Sprague struck appellant Wall, a minor, while she was a pedestrian crossing State Route 28 in Miami Township, Ohio, causing Wall to sustain serious injuries. At the time of the accident, Wall was crossing State Route 28 from the north. The particular location was not an intersection, nor was it within the boundary of a marked crosswalk.

**{¶75}** Wall and her mother, Wendi L. Wall, filed  an action against Sprague, alleging that he was negligent when he struck Wall with his vehicle, Sprague moved for summary judgment on Wall's claims, arguing that he owed no legal duty to Wall because she had attempted to cross State Route 28 at a point other than within a marked crosswalk or at an intersection, and therefore violated Sprague's right of way under R.C. 4511.48(A). After the trial court granted Sprague's motion for summary judgment, Wall and her mother appealed.

**{¶76}** In affirming the decision of the trial court, the court, in  *Wall*, stated, in relevant part, as follows: "With regard to the existence of a duty owed by the driver of a motor vehicle to a pedestrian, this court has previously held that a driver of a vehicle owes no duty of care to a pedestrian who walks into the path of the vehicle in an area not marked by a crosswalk, therefore violating the driver's right-of-way. *Snider v.*

*Nieberding,* Clermont App. No. CA2002-12-105, 2003-Ohio-5715. In *Snider,* a pedestrian was struck by a vehicle while she was crossing a road and walked into the vehicle's path. *Id.* at ¶ 2. It was undisputed that the vehicle was in the right-of-way, and the pedestrian had not crossed the road within a marked crosswalk. *Id.* at ¶ 10-11. There was no evidence that the driver of the vehicle violated any law or ordinance, and no traffic citations were issued to the driver as a result of the accident. *Id.* at ¶ 10.

{¶77} "Under Ohio law, the term 'right-of-way' is defined as '[t]he right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it * * * is moving in preference to another vehicle * * * or pedestrian approaching from a different direction into its * * * path.' R.C. 4511.01(UU)(1). In *Snider,* we noted that '[p]edestrians crossing a roadway at any point other than within a marked crosswalk must yield to this preferential right of way of vehicles.' *Id.* at ¶ 9, citing R.C. 4511.48(A). A driver is not required to look for pedestrians or vehicles violating their right of way. *Id.,* citing *Deming v. Osinki* (1970), 24 Ohio St.2d 179. A driver is only required to exercise due care to avoid colliding with a pedestrian who is in the driver's right of way once the driver discovers a dangerous or perilous situation. *Id.*

{¶78} "The facts in this case are similar to those in *Snider.* It is undisputed that Sprague's vehicle was in the right of way on State Route 28. It is also undisputed that Wall was not crossing State Route 28 within a marked crosswalk. There is no evidence that Sprague violated any law or ordinance, and no traffic citations were issued. Sprague had no duty to keep an 'effective look out' for Wall, since she was approaching from a different direction into his path. *Id.* at ¶ 13, citing *Deming* at 180-181.

**{¶79}** "A duty of care to avoid striking Wall would have arisen only after Sprague discovered that she was in his right of way. Both Sprague and his passenger testified in their depositions that they did not see Wall or the other two girls prior to the impact. The passenger testified that he initially believed the impact was a rock hitting the windshield of the vehicle. Sprague testified to seeing only a 'flash' of the green jacket worn by Wall's friend simultaneously with the impact, after which he immediately applied his brakes. Under these facts, we conclude that the injury to Wall was not foreseeable, as Sprague did not discover that Wall was in his right-of-way until the impact occurred. Accordingly, we find that Sprague did not violate any duty of care toward Wall under our holding in *Snider."* *Id* at paragraphs 12-15.

**{¶80}** Similarly, in *Markley v. Knutson* (Sept. 26, 1996), Marion App. No. 9-96-29, 1996 WL 546875, the trial court granted summary judgment to the driver of a vehicle that struck and killed a young boy walking across the road. After an appeal was filed, the appellate court held that the trial court had correctly found that the driver, who was driving on a lightly traveled rural road within the posted speed limit, was not negligent. The appellate court held that there was no reason why the driver should have expected the presentation of a dangerous or a perilous situation.

**{¶81}** The court, in *Markley,* held that the issue became when did the driver discover the existence of a dangerous or perilous situation, namely that the boy was crossing the road directly in front of her. The court further held as follows: "Appellee [the driver] had a duty of due care to avoid John Markley <u>once she saw he was encroaching onto her right of way</u>. Construing the facts in a light most favorable to the appellant, appellee did not breach this duty because she braked her vehicle and

attempted to swerve away from the child. Unfortunately, she was unable to miss striking the child, but she did discharge her duty of ordinary and due care." (Emphasis added.) Id at 4.

{¶82} Based on the foregoing, we find that appellee Ray Richardson, who was traveling within the posted speed limit and who was not violating any traffic laws, had the right- of -way and had no duty to look for pedestrians or vehicles violating his right-of-way. Because appellee Ray Richardson had the right-of-way, whether summary judgment was appropriate depends on whether or not he failed to exercise due care to avoid colliding with Shadel's vehicle once he discovered that the same was encroaching onto his right of way.

{¶83} As is stated above, Jack Holland, appellant's own expert, testified during his deposition, that 1.5 sections elapsed from the time the Shadel vehicle encountered appellee Ray Richardson's right-of-way until the point of impact. He further testified that it takes 1.5 sections, as a standard, for a driver just to recognize a danger and then additional time for the driver to take action in response to the same. Thus, by appellant's own expert's calculations, appellee Ray Richardson would have had no chance to avoid colliding with the VW once he recognized the danger. Moreover, appellee Ray Richardson, Michael Messer and Greg Jordon all testified that appellee Ray Richardson had no chance to avoid the collision. As is stated above, Michael Messer testified that only seconds passed from the time he took evasive action to avoid hitting the VW until the collision. Appellee Ray Richardson testified that he had only seconds to respond and that, when he first saw Shadel's vehicle, it was completely in his lane. When he observed Shadel's vehicle, he took evasive action by swerving his car to the right to

avoid colliding with the same. We find that appellee Ray Richardson exercised due care to avoid the collision once he discovered Shadel's vehicle in his right-of-way. The fact that appellee Ray Richardson may or may not have been on a hands-free cell phone at the time of the accident is irrelevant. Moreover, as noted by appellee Knox County Career Center/Knox County Board of Education in its brief, Jack Holland, appellant's expert, "never even mentions Defendant Richardson's use of his hands-free cell phone, and he certainly never opined that it had anything to do with the accident."

{¶84} We note that appellant, in her brief, argues that the last clear chance doctrine applies. The phrase "last clear chance" has been explained by the Supreme Court as follows: "Where a plaintiff, by his own fault, has caused himself to be placed in a perilous situation, he may recover under the rule of the 'last clear chance,' notwithstanding his negligence, if the defendant did not, after becoming aware of plaintiff's perilous situation, exercise ordinary care to avoid injuring him." *Cleveland Railroad Co. v. Masterson* (1932), 126 Ohio St. 42, 183 N.E. 873, at paragraph one of the syllabus. See also, *Peters v. B & F Transfer Co.* (1966), 7 Ohio St.2d 143 at paragraph six of the syllabus. As stated in *Masterson*, supra, at pages 49 and 50: "The last clear chance doctrine applies only where defendant had actual knowledge of plaintiff's peril in time to prevent injury by the diligent use of the means at hand."

{¶85} We note that the defense of last clear chance has merged into the doctrine of negligence and has no separate existence since the enactment of Ohio's comparative negligence statute. *Mitchell v. Ross* (1984), 14 Ohio App.3d 75, 76-77, 470 N.E.2d 245. Moreover, as is stated above, after having actual knowledge of the perilous condition, appellee Ray Richardson had absolutely no opportunity to avoid the collision.

{¶86} Based on the foregoing, we find that the trial court did not err in granting summary judgment in favor of appellee Ray Richardson and appellee Knox County Career Center/ Knox County Board of Education on the issue of appellee Ray Richardson's negligence. We find that reasonable minds, construing the evidence in favor of appellant, could only conclude that appellee Ray Richardson was not negligent. We concur with the trial court that Jack Holland's opinion that if appellee Ray Richardson had "taken a different evasive action the collision would not have occurred is 20-20 hindsight based upon what finally happened that day."

{¶87} Appellant's first and second assignments of error are, therefore, overruled.

III

{¶88} Appellant, in her third assignment of error, argues that the trial court erred in relying on the lay opinion testimony of Michael Messer and Greg Jordan, two other drivers, and Mary Messer, a passenger, in ruling on the pending Motions for Summary Judgment. As is stated above, all testified that there was nothing that appellee Ray Richardson could have done to avoid the collision. Appellant now argues that these individuals lacked the necessary expert qualifications and information to offer competent and admissible opinions.

{¶89} Lay witness opinion testimony is "limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. Opinion testimony is not excludable "solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

{¶90} In *Goeddel v. Santana, M.D.* (Sept. 30, 1987), Hamilton App. No. C-860695, 1987 WL 17773, the appellants argued that the trial court erred in admitting the lay-opinion evidence of Edwin Keener, who was an eyewitness of the accident who testified at trial that he believed that the accident was unavoidable. In rejecting the appellants' argument, the court, in such case held, in relevant part, as follows: "The appellants' objection to Keener's testimony is twofold. First, the appellants assert that Keener's opinion was inadmissible because it was not formed at the time that he witnessed the accident. Evid. R. 701 does not restrict opinion testimony to those opinions that are contemporaneous with the event about which the witness is expressing an opinion. The appellants suggest that Keener's opinion may have been based on more information than solely what he observed on the day of the accident. However, nothing in the record indicates that Keener engaged in experimentation, pursued further study or obtained other information before forming his opinion. Second, the appellants maintain that Keener's opinion was not helpful to the trier of fact. The decision to admit Keener's testimony was within the broad discretion of the trial court. We find that the decision to admit Keener's opinion, which was not plainly inadmissible under Evid. R. 701 and 704, did not constitute an abuse of discretion. *Leichtamer v. American Motors Corp.* (1981), 67 Ohio St.2d 456, 473, 424 N.E.2d 568, 581." Id at 1. In *Abraham v. Werner Enterprises*, Erie App. No. E-02-13, 2003-Ohio-3091, the court held that a manager who investigated accident for injured driver's employer was not qualified as an expert to give his opinion that accident was unavoidable when he had not witnessed the accident or viewed the accident scene.

{¶91} In the case sub judice, Greg Jordan, Michael Messer and Mary Messer all testified that the accident was unavoidable. All had witnessed the accident and had viewed the accident scene. We find, therefore, that their deposition testimony was rationally based on their perceptions and was admissible.

{¶92} Appellant's third assignment of error is, therefore, overruled.

Cross-appeal

{¶93} As is stated above, appellee Knox County Career Center/Knox County Board of Education has filed a cross-appeal. In its brief, appellee Knox County Career Center/Knox County Board of Education states that its appeal is conditional and asks that "in the event that this Court should reverse the trial court's judgment on the issue of Defendant Richardson's alleged negligence, Defendant-appellee Knox County respectfully requests that this Court reverse the trial court's judgment on the issue of whether Mr. Richardson was acting within the course and scope of his employment at the time of the accident."

{¶**94**} Having affirmed the trial court's judgment finding that appellee Ray Richardson was not negligent, we find that the assignment of error contained in the cross-appeal is moot.

{¶**95**}  Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Edwards, J.

Farmer, P.J. and

Delaney, J. concur

_____

_____

_____

JUDGES

JAE/d0330

[Cite as *Leahy v. Richardson*, 2011-Ohio-3214.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

DOLORES LEAHY, ADM. OF THE     :
ESTATES OF KATHERINE            :
RHINEBOLT AND RYAN RHINEBOLT   :
                                    :
        Plaintiff-Appellant     :
                                    :
                                    :
-vs-                               :      JUDGMENT ENTRY
                                    :
RAY RICHARDSON, et al.,         :
                                    :
        Defendants-Appellees    :      CASE NO. 10CAE080065

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____

_____

_____

                                      JUDGES